Gerald P. HANSON, Walter M.
Froembgen, Plaintiffs,

v.

William N. GOODWIN, Walter T. McGovern, Morell E. Sharp, Donald S. Voorhees, William T. Beeks, George H. Boldt, John C. Bowen, and William J. Lindberg, Defendants.

Walter M. FROEMBGEN, Plaintiff,

v.

Walter T. McGOVERN, Morell E. Sharp, and Donald S. Voorhees, Defendants.

Nos. C77–41MS, C77–56MS.

United States District Court,
W. D. Washington,
at Seattle.

May 12, 1977.

Gerald Hanson and Walter M. Froembgen, pro se.

JUDGMENT AND ORDER OF DISMISSAL AND ENJOINING PLAINTIFFS FROM COMMENCING CERTAIN LAWSUITS

MORELL E. SHARP, District Judge.

The plaintiffs *pro se* in the action C77–41MS name as defendants all three District Judges of this district, three Senior District Judges, one retired District Judge, and the late Judge William N. Goodwin, who passed away over a year ago. The plaintiffs seek from each defendant general damages of $100,000, "exemplary damages" of $150,000, and "punitive damages" of $200,000.

They charge a conspiracy among the Judges to adopt illegal local rules, specifically Rule 47 relating to voir dire of jurors by the Court, and Local Rule 7(b)(5), which provides for decisions on motions to be made without a hearing. Their premise, expressed obliquely in this complaint and more directly in some of the many others they have filed, is that they have a right to present their grievances to a jury without the threshold determination of matters of law by the Court. Such rulings by the Court, they insist, violate their constitutional rights and the Civil Rights Acts. There is no suggestion that the named Judges have done anything with respect to the plaintiffs other than rule on cases before the Court.

The filing of C77–41MS, was followed four days later by Plaintiff Froembgen's *pro se* suit C77–56MS against the three active judges of this court. It alleges in totally conclusory terms his dissatisfaction with legal rulings made by the judges of this court, charging numerous violations of the Constitution, which he deems to be acts of the judges in violation of criminal statutes relating to civil rights, specifically 18 U.S.C., § 242. He prays for general damages from each judge of $100,000, "exemplary damages" of $150,000, and "punitive damages" of $250,000.

■ The long established immunity of judges from suit for actions taken within their jurisdiction finds no exception in the law. The freedom a judge must have to decide matters brought before him without risk of intimidation has traditionally been held inviolate. *Bradley v. Fisher*, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646 (1872); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Gregory v. Thompson*, 500 F.2d 59 (9th Cir. 1974) (dictum). The plaintiffs, in each of these cases, having alleged no acts outside the jurisdiction of the defendant judges, fail to state a claim upon which relief can be granted.

No conceivable amendment of the complaints could cure the lack of jurisdiction. ". . . (I)t is well settled that the court must dismiss *sua sponte* at any time its lack of jurisdiction appears by any means. Fed.R.Civ.P. 12(b); *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Zank v. Landon*, 205 F.2d 615 (9th Cir. 1953); 2A Moore, *Federal Practice*, Para. 12.09[3] (2d ed. 1976)."

*O'Donnell v. Wien Air Alaska, Inc.*, 551 F.2d 1141, 1144 fn. 3 (9th Cir., 1977). *Cf. Wright v. Rhay*, 310 F.2d 687 (9th Cir. 1962), *cert. denied* 373 U.S. 918, 83 S.Ct. 1309, 10 L.Ed.2d 418; *Gilland v. Hyder*, 278 F.Supp. 189 (E.D.Tenn.1967). The author of this opinion has previously been dismissed from each of these cases. Now the complaints must be dismissed with prejudice.

These plaintiffs are no strangers to this Court. Including the present cases, plaintiff Froembgen has filed no fewer than eleven complaints within a sixteen month period, and plaintiff Hanson has filed the remarkable total of eight in little more than seven months. Plaintiff Froembgen has commenced the following actions:

*Froembgen v. Gunderson* (C75–712S). This suit was filed October 6, 1975, against the assistant superintendent of plaintiff's employer school district for the district's refusal to accept the plaintiff's W–4 form which indicated no taxes should be withheld and had the certification struck out, and for the district's actual withholding of taxes based on an earlier W–4 as required by law. The extent of the attorney work product evidenced by the file indicates that the defendant was put to substantial legal expense to demonstrate that the lawsuit was frivolous. Summary Judgment was entered for defendant June 18, 1976; reconsideration was denied July 29, 1976; and further hearing was denied by minute order on March 3, 1977.

*Froembgen v. Sassi, et al.* (C75–866S). The defendants here were the District Director, Internal Revenue Service, and three Internal Revenue Service employees. Stripped of allegations of threats, harassment, "false cajoling," intimidation, and malice, the complaint simply describes routine actions by employees of the Internal Revenue Service to determine the plaintiff's tax liability and discuss the same with him. Damages from each of the defendants were prayed for in the amount of $250,000 general damages, and $750,000 punitive damages. In the prayer, the plaintiff advanced his theory that all issues, including those raised on a motion to dismiss, must be heard by a jury; this misapprehension of law pervades most of the later papers presented to this Court. The action was dismissed on January 10, 1977. Motion for "relief from fraudulent dismissal" was denied February 9, 1977. Plaintiff has filed two subsequent motions in this cause.

*Froembgen v. Sassi, et al.* (C76–415S). The District Director's co-defendant in this case manages the Service Center in Ogden, Utah. The District had forwarded the deficiency notice relating to the plaintiff to the Service Center, which in turn had made demand on the plaintiff for his unpaid taxes. The plaintiff was sufficiently offended by these routine administrative functions that he claimed against the Directors of each office general damages of $1,000,000, and punitive damages of $3,000,000. A paper filed subsequently in this case referred to the "lying tactics of the presiding judge," and referred to the U. S. Attorney and the Judge as "two criminals in conspiracy." The cause of action was dismissed on September 17, 1976. Reconsideration was denied on March 11, 1977. Plaintiff filed a further document herein on March 17, 1977, charging a "fraudulent and criminal" dismissal.

*Froembgen v. Patterson* (C76–428S). The defendant, a deputy prosecuting attorney of Snohomish County, had two contacts with the plaintiff, according to the complaint. The first resulted in a refusal to do anything about the plaintiff's complaint regarding his W–4 form, and the second was a refusal to provide what is vaguely referred to as "redress under the provisions of the First Amendment." The prayer was for general damages of $250,000, and punitive damages of $500,000. The cause of action was dismissed September 28, 1976, and reconsideration denied, March 3, 1977. Plaintiff thereafter filed a motion for relief from "felonious denial of justice."

*Froembgen v. Sharp, et al.* (C76–460M). The first defendant is the author of this opinion, who dismissed the plaintiff's first lawsuit (C75–712S) upon the motion of Mr. Gunderson's attorneys. Those attorneys thus became the co-defendants in this action. The plaintiff accused all the defendants of conspiracy and criminal behavior, asserting in part that the action of the Court is comparable to aid to rebellion. The complaint is primarily a rambling polemic, which when reduced to its specific allegations describes attorneys engaging in discovery and moving the Court for dismissal, which motion was granted. Prayed for were $2,000,000 general damages and $2,000,000 punitive damages from each of the four defendants. The action was dismissed on October 27, 1976, and reconsideration denied on November 19, 1976. Further documents have been filed by the plaintiff.

*Froembgen v. Sassi, et al.* (C76–713S). The defendants are an Internal Revenue Service employee at the Service Center at Ogden, Utah, and once again the District Director. The plaintiff asked for "permanent injunctive relief from Internal Revenue Service lien notice," alleging that one of his prior suits (C75–866S, *supra* ) by its very existence barred tax collection efforts. This action was dismissed on November 18, 1976. Thereafter plaintiff filed a document entitled "Writ of Quo Warranto."

*Froembgen v. McGovern, et al.* (C76–767V). The defendants were two judges of this Court, the United States Attorney, an Assistant United States Attorney, and the plaintiff's habitual target, District Director Sassi of the Internal Revenue Service. The factual allegations are simply that the defendant Federal Judges dismissed a series of complaints and actions upon motions made by the United States Attorney's Office; each of these complaints concerned taxation and thus the District Director became once more a defendant. Claimed from each were general damages of $500,000 and punitive damages of $1,000,000. The action was dismissed on December 8, 1976. Thereafter plaintiff has filed documents under the caption "Supreme Court of the United States."

The plaintiff Froembgen then filed the cases now before the Court, and followed them with the following complaints:

*Froembgen v. Mansfield* (C77–77V). This filing resulted from a visit to the United States Attorney's office, where he spoke to the named defendant. He sought the help of that office in bringing criminal charges against the judges of this District. Upon being turned away by the defendant Assistant United States Attorney, the latter was added to the array of public officers and officials who have incurred the plaintiff's wrath. That wrath seems to lead directly to assault by litigation. The plaintiff prayed for "general damages" of $250,000, "exemplary damages" of $350,000, and "punitive damages" of $550,000. The suit was dismissed on January 28, 1977, and appeal to the U.S. Court of Appeals taken.

*Froembgen v. Sassi* (C77–82M). The District Director was sued once more, charged with conspiring with federal judges and the United States Attorney's office, filing false affidavits (in what manner they are false, we are not told), moving to remand a tax case to Tax Court (no specifics given), and generally subverting the Constitution and our republican form of government. He repeats his demand for a jury to rule on matters of law and claims general, "exemplary," and "punitive" damages totalling $325,000. The complaint was dismissed on February 1, 1977, and appeal taken to the U.S. Court of Appeals.

The grievances that eventually led the co-plaintiff, Mr. Hanson, to attack the judges of this Court began not with federal taxation, as with Mr. Froembgen's case, but with vaguely described entanglements with neighbors and with municipal and county authorities. The record of Mr. Hanson's litigation follows:

*Hanson v. Harrington, et al.* (C76–544V). The plaintiff sued the Mayor, City Attorney, Chief of Police, four police officers, and a police dispatcher of the City of Issaquah. From the obscurely expressed complaint, it appears that some two years before its filing, the plaintiff's daughter was charged with theft. There seem to have been other legal difficulties involving either the daughter or other members of the family, including impoundment of the plaintiff's truck, a guilty plea, probation, and a psychiatric evaluation. The case is pending in the discovery stage.

*Hanson v. Sands, et al.* (C76–745V). The five defendants are all county employees, three working in the Department of Public Health, one for the Building Department, and the fifth apparently an animal control officer, described in the complaint as "dogcatcher." Each defendant was accused of entering the plaintiff's property, counter to what the plaintiff asserts to be "the principle of a man's castle being his own and a matter of common law rights going back over the past centuries, such privacy cannot be invaded by any entity (sic)." The plaintiff demanded that a jury award him general damages of $25,000, and punitive damages of $50,000. Sharing Mr. Froembgen's misapprehension about the role of the jury in our judicial system, the plaintiff recited, "Plaintiff demands that this suit be under no consideration dismissed unless first heard by the Jury Demanded." The complaint was dismissed on December 9, 1976. Further documents have been filed by plaintiff, seeking judgment by default.

*Hanson v. Reedal, et al.* (C76–819V). The plaintiff sued twelve of his neighbors for

$11,000 each in general damages and $15,000 punitive damages. "Plaintiff demands retribution under the Civil Rights Program, for violation of Constitutional rights, for slander. The demands to accede to the wish of the Four Lakes Landowners Association is not only a threat to the Fifth Amendment immunities, it approaches violation of the Thirteenth Amendment, in that 'Involuntary servitude is demanded'." The action was dismissed on March 10, 1977. Further documents have been filed by plaintiffs, including affidavits of prejudice against all of the judges of this district.

*Hanson v. Voorhees, et al.* (C76–899S). The three defendants joined with United States District Judge Voorhees were the County Prosecutor and his two deputies who defended the county employees in the case described above (C76–745V). The essence of the claim is that the lawyers moved to dismiss that case and the Court granted the dismissal. General and punitive damages in the millions of dollars were claimed from each defendant. Along with the complaint, the plaintiff filed an affidavit of prejudice against the Chief Judge of this district, stating as grounds the "known and proven disregard of the Judge for the United States Constitution." After the Court dismissed this case on December 30, 1976, for failure to state a claim upon which relief could be granted, the plaintiff filed a document objecting to the Court's ruling as "an out and out lie and nothing but a lie and I challenge you Judge Sharp to prove otherwise."

*Hanson v. Sharp, et al.* (C77–28M). The plaintiff sought from two of the three active Judges of this District "general damages" of $1,000,000, "exemplary damages" of $1,250,000, and "punitive damages" of $1,500,000. In unrestrained, abusive terms, the plaintiff alleges no more on the factual level than that the defendant Judges wrongly dismissed cases in which he had an interest. Charges of lying, conspiracy, and criminality appear in the complaint. The

complaint was dismissed on January 11, 1977.

*Hanson and Froembgen v. Goodwin, et al.* (C77–41MS). One of the present cases.

*Hanson v. McGovern, et al.* (C77–47). This complaint is very similar in its tone and substance to the complaint described above (C77–28M) and to the complaint filed jointly with Mr. Froembgen which is now before the Court. Defendants are all three active Judges of this District and damages claimed are once more in the millions of dollars. Plaintiff also filed a "Warrant for Arrest of Defendants" with the U.S. Alcohol Tax Unit, commanding its director to arrest the defendants.[1]

*Hanson v. Sim, et al.* (C77–111S). This lawsuit is captioned as one against the (interim) United States Attorney and his staff and the F.B.I. Special Agent in Charge of the Seattle office and his staff, although the body of the complaint is a confusing mixture of singular and plural references, followed by a prayer for general, "exemplary," and "punitive" damages totalling $170,000 from a defendant identified only by the singular pronoun, "him." The essence of the accusations is that each office refused to bring criminal charges against the judges of this district. The action was dismissed on February 17, 1977. Plaintiff applied to appeal in forma pauperis, which application was denied on March 18, 1977, as frivolous, malicious, and not taken in good faith.

A cornerstone of our constitutional system is the citizen's right to place his grievance before a court, where he may be told whether his claim is legally cognizable and where he may obtain relief to the extent he is entitled to it. Obstacles between the *pro se* claimant and the court should be and are kept to a minimum consistent with rational and reasonably efficient judicial decision-making; such restrictions are found primarily in procedural rules, rules of pleading, and so forth. Underlying this vital principle of accessibility is an unspoken premise that the litigant will obey the rules

---

**1.** It is noted that in a space of eight (8) days, January 10, 1977, to January 18, 1977, these two plaintiffs filed four lawsuits against the judges of this court: C77–28, C77–41, C77–47, and C77–56.

in a rational way, that he will approach the court in good faith, that he will recognize the authority of judicial decision and conform his behavior to it.

Both plaintiffs here have amply demonstrated their contempt for the judicial process, refusing to accept decisions properly resulting from that process. In their hands, the civil complaint has become a bludgeon to be wielded indiscriminately against federal judges, attorneys, and officers. The record shows that these targets of their hostility have done nothing more than discharge their duties. While the plaintiffs may well believe that their aberrational views of the Constitution and the law represent the truth, their repeated lawsuits must be objectively described as brought only to vex, harass, and annoy.

Judicial resources are finite. Time taken to consider frivolous claims is time not available to legitimate litigants. Baseless litigation furthermore burdens the judicial support services, such as those performed by the District Court Clerk and the United States Marshal. Responsible litigants should not be prejudiced by delays so caused, nor should public treasury bear the costs.

There is substantial authority to support granting an injunction against further litigation by these plaintiffs as an incident of the Court's inherent powers under the all writs statute, 28 U.S.C. § 1651(a). *Clinton v. United States*, 297 F.2d 899 (9th Cir. 1961), *cert. denied*, 369 U.S. 856, 82 S.Ct. 944, 8 L.Ed.2d 14; *Adams v. American Bar Association*, 400 F.Supp. 219 (E.D.Pa.1975).

█ The plaintiffs repeatedly raise issues which are barred by res judicata, ignoring the appeal process. Their original complaints were given full and complete consideration by the court. They have had their claims considered over and over. Their pattern of behavior displays a propensity approaching compulsion to file lawsuits against judges, federal officers, and others whose proper actions produce results disliked by the plaintiffs. They should be enjoined from future attempts to relitigate the same or similar issues. *Meredith v.*

*John Deere Plow Co.*, 261 F.2d 121 (8th Cir. 1958), *cert. denied*, 359 U.S. 909, 79 S.Ct. 586, 3 L.Ed.2d 574; *Helene Curtis Industries v. Sales Affiliates*, 247 F.2d 940 (2nd Cir. 1957); *Gambocz v. Yelencsics*, 468 F.2d 837 (3rd Cir. 1972). A plaintiff was enjoined from further lawsuits in a case remarkably similar to this, where his suits against government attorneys and a court clerk alleged "no more than that the plaintiff has been denied recovery in the various actions instituted by him . . . by the adverse rulings of presiding judges." *Rudnicki v. McCormack*, 210 F.Supp. 905 (D.R.I. 1962). An injunction was entered against the plaintiff in *Boruski v. Stewart*, 381 F.Supp. 529 (S.D.N.Y.1974), *aff'd* 493 F.2d 301 (2nd Cir. 1974), where the Court held (at 535) that "it is not uncommon for a disappointed litigant to bring a subsequent action alleging that the adverse decisions resulted from prejudice or misconduct of virtually every person in authority who functioned on his claims; and where it is apparent that the litigation is baseless, the issuance of an injunction is proper."

It is not the purpose of the Court to prevent the plaintiffs from bringing any substantial action which either may have at any time, but, rather, to require that before any further action is commenced which relies on one or more of the legal theories previously rejected by the Court, the plaintiffs must satisfy a judge of this Court that the action presents at least a *prima facie* case that is not duplicative, meretricious, or vexatious.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that these cases are DISMISSED *sua sponte* with prejudice.

It is further

ORDERED that the plaintiffs WALTER M. FROEMBGEN and GERALD P. HANSON be and they hereby are perpetually enjoined from commencing any lawsuit or other legal proceeding against any federal judge, any federal attorney, any federal law enforcement officer, or any other federal employee without prior leave of a

judge of this Court. These plaintiffs shall not advise, counsel, or assist in any way any other person to commence such a lawsuit or other legal proceeding. Lawsuits and other legal proceedings barred by this injunction include any where a material allegation or necessary premise is that a federal judge, attorney, law enforcement officer, or employee has violated the Constitution, a criminal statute, the civil rights acts, or his oath of office in the performance of his official functions. Any paper filed with the Clerk of this Court, without prior leave of Court, which makes such an allegation or depends on such a premise shall violate the terms of this injunction.

The Clerk of the Court is directed to refer forthwith to a judge of this Court any paper presented by either of these plaintiffs which on its face appears to be prohibited by this injunction for a determination of whether a violation has occurred and for such further proceedings, including dismissal of any action or denial of any motion *sua sponte* and issuance of an order directing the party or parties to show cause why they should not be held in contempt of Court, as may then appear just and necessary.

It is further

ORDERED that the Clerk of this Court is directed to certify two copies of this Order and cause the same to be personally served by the United States Marshal upon the plaintiffs in this case. In the event either plaintiff cannot be located at his last known place of residence, the same may be served by registered mail.