**In re Billy Roy TYLER, Petitioner.**

Nos. 87–8149, 87–8153, 87–2259.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 23, 1987.

Decided Jan. 28, 1988.

No brief filed for appellant.

No brief filed for appellee.

Before McMILLIAN, BOWMAN and MAGILL, Circuit Judges.

PER CURIAM.

Billy Roy Tyler appeals from the en banc order of the district court[1] entered on its own motion on August 25, 1987, 677 F.Supp. 1410, limiting him to a single monthly filing in that court, as well as prescribing certain conditions precedent to the filing of future lawsuits and prohibiting him from submitting pleadings on behalf of other prisoners. Tyler appealed this ruling in case No. 87–2259, sought mandamus relief of the order in case No. 87–8153, and sought mandamus to compel speedier disposition of his filings in case No. 87–8149. Because all three cases essentially seek review of the district court's order, we consolidate them and dispose of all three in this opinion.

We find no error of fact or law in the district court's order, and we affirm it pursuant to 8th Cir.R. 14. Because we en-

---

1. The Honorable C. Arlen Beam, Chief Judge (now Circuit Judge for the Eighth Circuit Court of Appeals), Warren K. Urbom and Lyle E. Strom, District Judges, United States District Court for the District of Nebraska.

dorse the policy and rationale of the district court, we attach the order to this opinion as Appendix I.

## APPENDIX I

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEBRASKA

### IN RE BILLY ROY TYLER

### MEMORANDUM AND ORDER

This matter is before the court on its own motion. Billy Roy Tyler, a former inmate at the Nebraska State Penitentiary in Lincoln, has filed numerous complaints in this court alleging that his civil rights have been violated by the defendants named in the suits. He has engaged in practices which have been abusive to this court and its personnel, and has caused unnecessary administrative expenses in the handling of his cases, as well as delays in the handling of others. For these reasons, the court takes it upon itself to address the abuses of Mr. Tyler's actions, and impose appropriate sanctions.

Since January 1, 1986 Mr. Tyler has filed 113 cases in this court in his own name as petitioner or plaintiff. Prior to January 1, 1986 he had filed 36 such lawsuits. In addition to those in which he is a named plaintiff, he also has drafted innumerable complaints in behalf of other inmates at the Nebraska State Penitentiary or in those institutions in which he has been confined. In all cases he has been granted leave to file such complaints without the prepayment of costs or filing fees, pursuant to the provisions of 28 U.S.C. § 1915. According to records in the office of the clerk, 51 of Mr. Tyler's cases were dismissed without service of summons upon a finding that they were either frivolous or had at least failed to state a claim upon which relief could be granted under 42 U.S.C. § 1983. Six were dismissed on motions of the defendants before trial. Thirty-one cases

were dismissed on the plaintiff's motion before trial. Two were dismissed when the plaintiff refused to appear at a pretrial conference with the magistrate and defense counsel at the penitentiary. Mr. Tyler filed no less than 17 petitions for writs of habeas corpus, almost all of which challenged, on the same grounds, the conviction for which he is serving a sentence. Of his civil rights cases, only two have gone so far as to require a trial, one of which was dismissed at the close of the plaintiff's case, and the other resulted in a judgment for plaintiff for nominal damages in the amount of $5.00.

In addition to the above information which is taken from the files in the office of the clerk, the court further notes that in many cases Mr. Tyler has sought to appeal orders of the magistrate to the Eighth Circuit Court of Appeals, which is clearly not permitted; sought to appeal interlocutory orders of the trial judges to the Eighth Circuit Court of Appeals; and otherwise attempted to appeal nearly every disposition of his cases to the Eighth Circuit Court of Appeals. All of such appeals have been unsuccessful to date.

Further, Mr. Tyler has in his letters to the court, pleadings filed with the court, and statements made during court sessions, used foul and disgusting language, calling court staff, including deputy and assistant clerks, law clerks, secretaries, magistrates, and judges, racially derogatory names, hurled epithets, and otherwise utilized abusive language disrespectful of the court and all in his presence.

In those cases where Mr. Tyler's requests for the appointment of counsel have been granted, appointed counsel have been similarly treated, and in all cases have been either dismissed by Mr. Tyler or have been granted leave to withdraw in response to his scorn.

Mr. Tyler has on several occasions named parties as defendants in his complaints who have in no way been involved in the events allegedly giving rise to his complaints, including all of the judges of

this court, the magistrates of this court, the governor of the State of Nebraska, his former attorneys, and even "Li'l Red Riding Hood." No attempt has been made in many of his complaints to make any specific allegations with respect to every individual named as a defendant in his complaints, thus requiring the dismissal of such complaints as frivolous.

In complaints drafted by Mr. Tyler for signature by other inmates, his propensity to name uninvolved parties as defendants and to make broad, conclusional allegations against those named has caused other inmates to suffer the dismissal of claims found to be frivolous. Whether careful and deliberate drafting of specific complaints would have caused such cases to go forward is not known, of course, but in most instances in which Mr. Tyler was the author of the complaints, it is apparent that his services were of no great assistance to the inmate plaintiffs he was seeking to help.

Despite this court's orders dismissing his redundant habeas corpus actions challenging the conviction for which he is serving a sentence, he continued to submit additional petitions seeking writs of habeas corpus challenging the same conviction on the same grounds.

Recently Mr. Tyler wrote the court requesting that all of his then-pending actions be dismissed in order that he might be favorably considered for an interstate transfer. More than 30 such cases were dismissed in response to that request. The interstate transfer has apparently now been granted, but his steady flow of complaints has resumed, now originating from Stillwater, Minnesota, the place of his present confinement. Pending the issuance of this memorandum and order, several complaints submitted for filing have been retained in order that they may be treated in accordance with the terms of this order. The fact that Mr. Tyler was willing to so readily dismiss voluntarily over 30 pending cases in this court on the hope that doing so would cause him to be transferred to another prison indicates that he was not seriously pursuing the claims raised in those cases.

The Supreme Court found in *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), that an inmate in a state prison has a constitutional right, under the due process clause of the Fourteenth Amendment, to access to the courts. However, there is "no constitutional right of access to the courts to prosecute an action that is frivolous or malicious." *Phillips v. Carey,* 638 F.2d 207, 208 (10th Cir.1981). As recently explained by one court faced with a similar situation,

> The Court has authority to control and manage matters pending before it. This includes trial and pre-trial actions. *Turner v. American Bar Association,* 407 F.Supp. 451 (N.D.Tex.1975); *In re Sarelas,* 360 F.Supp. 794 (D.C.Ill.1973), aff'd, 497 F.2d 926 (7th Cir.1974). The need for such control bears noting. First, Rule 1 of the Federal Rules of Civil Procedure provides that the rules shall be construed to secure the just, speedy, and inexpensive determination of every action. Three fundamental goals underlie this mandate; maintaining the quality of justice, avoiding delay, and improving the efficiency of dispute resolution. In order to secure these values, we must recognize that judicial resources are limited in the short run and need to be protected from wasteful consumption. *See, Hanson v. Goodwin,* 432 F.Supp. 853 (W.D.Wash.1977). Frivolous, bad faith claims consume a significant amount of judicial resources, diverting the time and energy of the judiciary away from processing good faith claims. *See, e.g., In re Green,* 598 F.2d 1126 (8th Cir.1979).
>
> The most apparent effect of excessive litigation is the imposition of unnecessary burdens on, and the useless consumption of, court resources. *See, In re Martin–Trigona,* 573 F.Supp. 1237, 1242 (D.Conn.1983).... As caseloads increase, courts have less time to devote to

each case. A lack of adequate time for reflection threatens the quality of justice. *See, Franklin v. Oregon,* 563 F.Supp. 1310, 1319 (D.Or.1983). Second, long delays in adjudication create public dissatisfaction and frustration with the courts. Such delays also result in the unfortunate continuation of wrongs and injustices while the cases that would correct them sit on court calendars. Third, abusive litigation results in prolonged, repetitive harassment of defendants causing frustration and often extraordinary and unreasonable expenditures of time and money defending against unfounded claims.

Defendants have a right to be free from harassing, abusive, and meritless litigation. *See, Theriault v. Silber,* 574 F.2d 197 (5th Cir.1978). Federal courts have a clear obligation to exercise their authority to protect litigants from such behavior. *Chatmon v. Churchill Trucking Co.,* 467 F.Supp. 79 (D.Mo.1979). The Court may, in its discretion, place reasonable restrictions on any litigant who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process. *Phillips v. Carey,* 638 F.2d 207, 209 (10th Cir. 1981). These restrictions may be directed to provide limitations or conditions on the filing of future suits. *Id.*

*People of the State of Colorado v. Carter,* 678 F.Supp. 1484, 1486 (D.Colo. 1986).

In *Green v. White,* 616 F.2d 1054 (8th Cir.1980), the Eighth Circuit Court of Appeals upheld major portions of an injunction directing the clerks of the federal court in Missouri not to file any pleadings from Mr. Green until he had fulfilled the requirements of the order, including verification of all pleadings; a list of all cases previously filed on the same, similar, or related causes, as well as the opinions therein; sending a copy of every pleading to the chief judge's law clerk; and paying all applicable filing fees. The Eighth Circuit modified the injunction by deleting that part of it enjoining Mr. Green from ever proceeding in forma pauperis under 28 U.S.C. § 1915. Rather, the court permitted applications for in forma pauperis status to be reviewed "in those pleadings, if any, that specifically allege constitutional deprivation by reason of physical harm or threats to petitioner's person." *Id.* at 1055. Those cases were required to be reviewed, but could be dismissed if found to be frivolous or malicious. *Id.* at 1056. *See, also, Peck v. Hoff,* 660 F.2d 371 (8th Cir.1981); *Carter v. Telectron, Inc.,* 452 F.Supp. 944 (S.D.Tex.1977).

Mr. Tyler's extensive experience in filing lawsuits in federal and other courts has equipped him with at least some knowledge of the law regarding prisoners' constitutional rights. Unfortunately, this experience has not taught him how to evaluate whether or not a constitutional claim exists. His complaints filed in this court usually recite events which occurred no more than a few days prior to the drafting of the complaint, and oft times on the same day the complaint was drafted. Given the sometimes illegible handwriting in which the complaints are couched, it is inferable that the complaint was literally scrawled on the first piece of paper available to Mr. Tyler after some event took place which he could interpret as possibly implicating a denial of some constitutional right. His skills in drafting are often sufficient to at least raise a question as to factual matters alleged which could constitute a claim, thereby preventing dismissal of the complaint as "frivolous" under 28 U.S.C. § 1915(d). On the other hand, it has most often been true that once the allegations of the complaint are subjected to factual determination through defense motions, trial, or otherwise, the allegations contained in the complaints have been found not to be true. In *Horsey v. Asher,* 741 F.2d 209 (8th Cir.1984), the court found that allegations in complaints which are known to be false are "malicious" within the meaning of 28 U.S.C. § 1915(d), thereby justifying dismissal. The difficulty insofar as use of the

court's resources is concerned, is that a review of Mr. Tyler's pleadings alone is insufficient to determine whether the facts therein alleged are true; for that purpose a trial, hearing, or the presentation of affidavit testimony or records, is required in most cases. Thus, simply to require a prefiling, or prompt postfiling, review of his complaints submitted to this court is insufficient to curb the abuses experienced.

Mr. Tyler has no money. The records of this court contain documentation submitted by both Mr. Tyler and the appropriate official from the Nebraska State Penitentiary, disclosing that his prison trust account is for all practical purposes non-existent as a source of funds for him to pay any fee for filing cases in this court or elsewhere. Thus, it can be concluded that if he were to be prohibited from proceeding in forma pauperis in any case, his access to this court would be totally denied. In accordance with *Green v. White, supra*, we reject this alternative as too strict a sanction to impose upon Mr. Tyler at this time. His lack of funds, however, also precludes the typical sanctions available to the courts for imposition upon other abusive litigants, such as those permitted by Rule 11, Fed.R. Civ.P. imposing costs and attorneys fees upon such parties.

Verification of pleadings may in some small measure thwart the use of such allegations as may be outright mistruths, but without a monetary or other sanction to penalize a false verification, short of criminal prosecution, this requirement appears to us to be of little value.

Likewise, the requirement of listing other cases filed in federal court appears unnecessary, as such listing from Mr. Tyler may not always be complete, and this court can review its own files. However, in view of the fact that Mr. Tyler on some occasions at least, filed duplicitous lawsuits in federal and state courts, a requirement that he provide this court with copies of any pleadings or claims made in state court which are being asserted in this court appears most appropriate.

While we stop short of denying Mr. Tyler leave to proceed in forma pauperis in all cases, we will limit him in the number of cases he may file with such status in this court. Such a limit will not deny him access to the court, particularly in view of the fact that the statute of limitations for filing actions under 42 U.S.C. § 1983 in Nebraska is four years. *Ellis v. Kneifl*, CV85–L–299 (D.Neb. Memorandum dated September 12, 1986 at p. 2), [Available on Westlaw, 1986 WL 15946], and noting further that under Nebraska statute such limitations period is tolled during incarceration. *See*, Neb.Rev. Stat. § 25–213 (1986 Cum.Supp.). Thus, in the event Mr. Tyler has serious claims to assert, he may still assert them, albeit with some delay, and the most urgent of his claims can still be presented to this court, at the rate of one in forma pauperis filing per month.

In addition, we will prohibit Mr. Tyler from drafting complaints for other inmates. His abuses of this court have not been limited to those cases in which he has himself been a plaintiff, but rather have also occurred in cases in which he drafted the complaint for others. *See, e.g., Moore v. Little Red Riding Hood*, CV86–L–629. Such practices, if permitted to continue in cases filed for other prisoners would make a mockery of this order, as well as more importantly, continuing disservice to the other prisoners. This court is well aware that the legal assistance available to inmates at the Nebraska State Penitentiary may not be as readily available to some inmates as they would like; however, Mr. Tyler's availability for such purposes would make no great difference in the availability of such legal assistance.

Mr. Tyler's abusive language and actions will no longer be tolerated. The inclusion of such language is in all respects "malicious" within the meaning of 28 U.S.C. § 1915(d). Therefore, in the event any pleading submitted by Mr. Tyler for filing in this court includes such language, leave to proceed in forma pauperis will be denied. Nevertheless, however, that pleading will

be counted as far as meeting his one complaint per month limitation.

We expressly find, as did the court in *Carter, supra,* that Mr. Tyler has flagrantly and repeatedly abused judicial process by filing a multitude of meritless lawsuits, and that this course of conduct will likely continue unabated unless preventive measures are imposed. To insure the integrity of the judicial process, therefore, the measures set forth below will be required.

IT THEREFORE HEREBY IS ORDERED:

1. The clerk of this court is hereby directed not to accept in excess of one pleading per month initiating a new lawsuit for Mr. Billy Roy Tyler as plaintiff or petitioner, which is accompanied by an application to proceed in forma pauperis, unless the complaint or petition alleges in clear, specific language that the plaintiff has been, or is about to be subjected to immediate, extraordinary, and irreparable physical harm, such allegations being supported by an accompanying affidavit which sets forth clearly and specifically the facts giving rise to the complaint and any documentation of such facts that may exist.

2. The clerk shall return to Billy Roy Tyler any and all petitions or complaints submitted in excess of one per month, unless the exception noted in paragraph 1 above applies, including all such complaints presently held for filing prior to the filing of this order.

3. In each new complaint or petition submitted to this court for filing, Billy Roy Tyler shall set forth therein (a) whether or not an action has been filed in any other court alleging the same facts or claims, or related facts or claims as those contained in the pleading submitted for filing in this court, and if so, (b) Billy Roy Tyler shall submit a copy of such pleadings from such other court as may be applicable, together with a copy of the court's ruling thereon, if any.

4. Each petition or complaint submitted to this court for filing in forma pauperis, shall be accompanied by an affidavit in support of the applicant's leave to proceed in forma pauperis, which shall be supported by a copy of Mr. Tyler's trust account statements for the twelve months preceding the submission to this court, certified by the appropriate official at the Nebraska State Penitentiary or other institution where Mr. Tyler may be then confined.

5. Billy Roy Tyler shall not draft or submit any documents or pleadings to this court in behalf of other inmates. In the event such documents or pleadings are received by the clerk for filing, they shall be returned to the inmate in whose name they have been submitted, together with a copy of this memorandum and order. They shall not be filed.

6. Nothing in this order shall prohibit Mr. Tyler from proceeding as a proponent in any civil claim in this court with the representation of an attorney licensed to practice in the State of Nebraska and admitted to practice in this court.

Dated August 25, 1987.

BY THE COURT

/s/ C. Arlen Beam
C. Arlen Beam
Chief Judge

/s/ Warren K. Urbom
Warren K. Urbom
District Judge

/s/ Lyle E. Strom
Lyle E. Strom
District Judge