Jerardo RODRIGUEZ, Plaintiff–
Appellant,

v.

David COOK, Director, Oregon State
Penitentiary, Defendant–
Appellee.

No. 97–35095.

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 3, 1998. *

Decided Feb. 25, 1999.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a); 9th Cir. R. 34–4.

Jerardo Rodriguez, Salem, Oregon, in pro per for the plaintiff-appellant.

James R. George, Assistant Attorney General, Salem, Oregon, for the defendant-appellee.

Before: NOONAN, THOMPSON, and TROTT, Circuit Judges.

## ORDER

The Opinion filed in this case on December 16, 1998, is hereby WITHDRAWN. A new Opinion of this appeal is filed with this order.

## OPINION

TROTT, Circuit Judge:

### I. Overview

Jerardo Rodriguez ("Rodriguez") appeals, pro se, the dismissal of his complaint brought under 42 U.S.C. § 1983. Rodriguez's complaint alleges that the Oregon Administrative Rule which limits indigent prisoners to five free postage stamps per month violates his First and Fourteenth Amendment right to

meaningful access to the courts. After his complaint was dismissed by the district court, Rodriguez filed this appeal, proceeding in forma pauperis ("IFP"). We raised the issue of whether 28 U.S.C. § 1915(g) (" § 1915(g)" or the "three-strike rule") prevented Rodriguez from proceeding under IFP status. The parties submitted supplemental briefing. We now hold that Rodriguez is ineligible for IFP status and therefore dismiss his appeal without prejudice.

### II. Background

On May 22, 1996, Rodriguez filed a complaint against Director David Cook ("Cook") of the Oregon State Penitentiary. Rodriguez alleged that Oregon Administrative Rule 291–131–0015, which limits indigent prison inmates to five free stamps a month, violates his constitutional right to access the courts.[1] Cook filed a motion to dismiss, which the district court treated as a motion for summary judgment and granted.

After Rodriguez's complaint was dismissed on summary judgment, Rodriguez filed this appeal. Rodriguez proceeded IFP in both the complaint and this appeal. After briefs were filed, we raised the issue of whether Rodriguez was eligible for IFP status. We subsequently requested and received from both parties supplemental briefing on whether Rodriguez is eligible for IFP status. Because we hold that Rodriguez is not eligible for IFP status, we do not address the merits of Rodriguez's appeal and instead dismiss it without prejudice.

### III. Discussion

#### A. Prison Litigation Reform Act

■ Parties filing actions including appeals to this court are required to pay a filing fee. *See* 28 U.S.C. § 1913; Fed. R.App. P. 3(e). An action may proceed despite failure to pay the filing fees only if the party is granted IFP status. The Prison Litigation Reform Act, 28 U.S.C. § 1915(g) provides that

---

1. Oregon provides indigent inmates with unlimited postage for mailing documents directly to the courts and opposing parties. Or. Admin. R. 291–139–040(5)(a). In corresponding by mail with his own attorney, however, an inmate is limited to five free stamps. Or. Admin. R. 291–131–0015(7).

[i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section [proceedings in forma pauperis] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

The plain language of § 1915(g) denies IFP status to prisoners who have had three or more civil actions dismissed as frivolous, malicious, or because the case fails to state a claim upon which relief can be granted, unless the inmate is in danger of serious physical injury.

### B. Rodriguez's Status

■ We have previously recognized that Rodriguez has had more than three claims dismissed as frivolous.[2] *See Rodriguez v. Cook*, No. 96–36105, 1997 WL 723071, at *1 (9th Cir.1997) (affirming a district court dismissal under 28 U.S.C. § 1915(g) because "Rodriguez had at least six prior actions dismissed as frivolous").[3] In this case, Rodriguez does not allege that he is under imminent danger of serious physical injury and is therefore ineligible for IFP status. 28 U.S.C. § 1915(g). However, Rodriguez argues that this appeal should not be dismissed under § 1915(g) because, although he may have had three or more *civil cases* dismissed as frivolous, he has not had three or more *appeals* dismissed as frivolous. Rodriguez

asks this court to read the three-strike rule to require three or more frivolous appeals before precluding IFP status for appeals. There is no support for this argument. Indeed, the plain language of § 1915(g) precludes IFP status for a "civil action *or* appeal" if the prisoner has brought three or more "action[s] *or* appeal[s]." § 1915(g) (emphasis added). Rodriguez has had more than three actions dismissed as frivolous and is therefore denied IFP status for civil actions or appeals. Moreover, Rodriguez's interpretation of § 1915(g) would inhibit its purpose by giving prisoners three frivolous civil actions and three frivolous appeals. We do not believe that Congress intended such a result.

### C. Constitutionality of § 1915(g)

In his supplemental briefing, Rodriguez argues that § 1915(g) should not bar his case because § 1915(g) is unconstitutional. Rodriguez argues that § 1915(g) should be held unconstitutional because (1) it violates Fifth Amendment Equal Protection rights, (2) it constitutes an ex post facto law, and (3) it violates separation of powers. We disagree with Rodriguez's argument and hold that § 1915(g) does not violate any of the specified constitutional provisions.

### 1. Fifth Amendment Due Process/Equal Protection

Rodriguez claims that the three-strike rule violates equal protection by treating indigent prisoners differently than wealthy prisoners.[4] Although the Fifth Amendment does not have an equal protection clause, it does con-

---

**2.** We note that the constitutionality of 28 U.S.C. § 1915(e)(2)(B)(ii) which allows a court to dismiss an inmate's civil case sua sponte for failure to state a claim has been called into question. *See Mitchell v. Farcass*, 112 F.3d 1483, 1491 (11th Cir.1997) (Lay, J., concurring). The only circuit to address this question has held that § 1915(e)(2)(B)(ii) is constitutional. *Christiansen v. Clarke*, 147 F.3d 655, 658 (8th Cir.1998). Although we do not believe the concerns raised by Judge Lay in *Mitchell* are relevant to § 1915(g), those issues were not raised in this case, and we do not address them.

**3.** Rodriguez does not dispute that he has had more than three prior cases dismissed as frivolous. He only argues the prior holding of this court is not binding upon this appeal. Even if

Rodriguez is correct, after reviewing Rodriguez's litigation history, we agree that Rodriguez has had more than three cases dismissed as frivolous.

**4.** Rodriguez specifically argues that § 1915(g) violates Fourteenth Amendment equal protection. By its plain terms, the Fourteenth Amendment would not bar § 1915(g) because § 1915(g) is a federal statute and the Fourteenth Amendment only applies to the individual states. However, we will treat Rodriguez's Fourteenth Amendment claim as a Fifth Amendment due process claim because Fifth Amendment due process provides the same protection and requires the same analysis as Fourteenth Amendment equal protection. *Buckley v. Valeo*, 424 U.S. 1, 93, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

tain a due process clause which "prohibits the federal government from engaging in discrimination that is 'so unjustifiable as to be violative of due process.'" *Schlesinger v. Ballard,* 419 U.S. 498, 500 n. 3, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975) (quoting *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954)). "The guarantee of equal protection under the Fifth Amendment is not a source of substantive rights or liberties, but rather a right to be free from invidious discrimination in statutory classifications and other governmental activity." *Harris v. McRae,* 448 U.S. 297, 322, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980) (citations omitted).

■ In addressing an equal protection claim, we must first decide the level of scrutiny. We apply a strict scrutiny standard only if the legislation discriminates against a suspect class or infringes upon a fundamental right. *Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992); *Madrid v. Gomez,* 150 F.3d 1030, 1040 (9th Cir.1998). Moreover, we presume the classification is constitutional unless it is based upon a suspect classification or impinges upon a fundamental right. *Harris,* 448 U.S. at 322, 100 S.Ct. 2671.

■ Initially, we note that indigent prisoners are not a suspect class. *See Harris,* 448 U.S. at 323, 100 S.Ct. 2671 (indigent persons are not a suspect class); *Webber v. Crabtree,* 158 F.3d 460, 461 (9th Cir.1998) (prisoners are not a suspect class); *Tucker v. Branker,* 142 F.3d 1294 (D.C.Cir.1998) (indigent prisoners are not a suspect class).

■ Additionally, § 1915(g) does not infringe on a prisoner's constitutional right to access the courts. Although the Supreme Court, in *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), held that prisoners have a constitutional right of meaningful access to the courts, a prison system need not provide maximum or even optimal level of access. *Lewis v. Casey,* 518 U.S. 343, 354–55, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Wood v. Housewright,* 900 F.2d 1332, 1335 (9th Cir.1990). Other courts have upheld regulations which impose reasonable costs on persons who want to sue. *Lumbert v. Illinois Dep't of Corrections,* 827 F.2d 257, 259 (7th Cir.1987).

We have not previously addressed whether fee requirements and specifically § 1915(g) violates a prisoner's right to access the courts. Seven circuits have addressed the related issue of whether requiring prisoners to pay fees violates a prisoner's access to the courts. *See Tucker v. Branker,* 142 F.3d 1294, 1297 (D.C.Cir.1998); *Lucien v. DeTella,* 141 F.3d 773, (7th Cir.1998); *Shabazz v. Parsons,* 127 F.3d 1246, 1248–49 (10th Cir.1997); *Norton v. Dimazana,* 122 F.3d 286, 289–91 (5th Cir.1997); *Nicholas v. Tucker,* 114 F.3d 17, 21 (2d Cir.1997); *Roller v. Gunn,* 107 F.3d 227, 231–33 (4th Cir.1997); *Hampton v. Hobbs,* 106 F.3d 1281, 1284–86 (6th Cir.1997). All seven have held that requiring prisoners to pay a filing fee does not deny a prisoner effective access to the courts. These cases reason that requiring prisoners to make the same financial decisions as non-prisoners before filing a cause of action does not violate equal protection. However, these cases deal with portions of the PLRA which require prisoners to pay filing fees in installments when their inmate accounts contain more than ten dollars. *See* 28 U.S.C. § 1915(b). Although relevant, these cases are not directly on point.

In fact, only two circuit courts have specifically addressed whether § 1915(g) violates a prisoner's access to the courts. Both courts have found the three strikes rule to be constitutional. In *Carson v. Johnson,* 112 F.3d 818, 821, (5th Cir.1997), the Fifth Circuit held that the three-strike rule does not violate the Fifth Amendment due process clause because it does not prohibit prisoners from filing a lawsuit, it only denies them IFP status. Likewise, in *Rivera v. Allin,* 144 F.3d 719, 723–24 (11th Cir.1998), the Eleventh Circuit held that IFP status is a privilege, not a right, and that § 1915(g) does not unconstitutionally burden a prisoner's access to the courts. Significantly, the Supreme Court has at times prospectively denied IFP status to prisoners filing for writs of certiorari because those prisoners had filed numerous frivolous writs. *See Shieh v. Kakita,* 517 U.S. 343, 343–344, 116 S.Ct. 1311, 134 L.Ed.2d 464 (1996); *Martin v. District of Columbia Court of Appeals,* 506 U.S. 1, 2, 113 S.Ct. 397, 121 L.Ed.2d 305 (1992); *In re McDonald,* 489

U.S. 180, 109 S.Ct. 993, 994, 103 L.Ed.2d 158 (1989).

The Supreme Court has held that the Constitution requires the waiver of filing fees in criminal cases. *Mayer v. Chicago,* 404 U.S. 189, 195–96, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971); *Griffin v. Illinois,* 351 U.S. 12, 18–20, 76 S.Ct. 585, 100 L.Ed. 891 (1956). In the civil context, however, the Constitution only requires waiver of filing fees in a narrow category of cases where the litigant has a "fundamental interest at stake." *M.L.B. v. S.L.J.,* 519 U.S. 102, 117 S.Ct. 555, 562, 136 L.Ed.2d 473 (1996). The Supreme Court has specifically required the waiver of filing fees for indigent persons who are challenging termination of their parental rights, *id.,* or seeking a divorce, *see Boddie v. Connecticut,* 401 U.S. 371, 374, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). Conversely, the Supreme Court has held that discharge of debts in bankruptcy does not effect a fundamental interest and therefore waiver of filing fees is not constitutionally required. *United States v. Kras,* 409 U.S. 434, 444–45, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973); *see also Ortwein v. Schwab,* 410 U.S. 656, 659, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973) (per curiam) (holding that waiver of filing fees is not required where indigent person is challenging reduction of welfare benefits).

In this case, Rodriguez's claim does not implicate a "fundamental interest." Although the Constitution confers on inmates a well-established right to meaningfully access the courts, it does not require unlimited state-subsidized communication with counsel, but "only that [prisoners] be able to present their grievances to the courts," *Lewis,* 518 U.S. at 360, 116 S.Ct. 2174. Rodriguez is given unlimited access to the courts. His claim for more stamps does not implicate the right to access the courts but constitutes an attack on the particular methodology chosen by Oregon to fulfill the constitutional requirement of access to the courts. *See id.* at 356, 116 S.Ct. 2174 (*"Bounds* ... guarantees no particular methodology but rather the conferral of a capability...."*).

In this case, we agree with *Carson* and *Rivera* and hold that where a fundamental interest is not at stake, § 1915(g) does not infringe upon an inmate's meaningful access to the courts. Section 1915(g) does not pro-

hibit prisoners from accessing the courts to protect their rights. Inmates are still able to file claims-they are only required to pay for filing those claims. In reaching our conclusion, we recognize that some prisoners may be unable to prepay filing fees, and will thereby be unable to bring their actions immediately. However, non-prisoners face similar concerns. Some prisoners will be required to save money in order to prepay a filing fee and bring a claim. Again, non-prisoners face that same situation. Section 1915(g) does require prisoners to be fiscally responsible and make decisions concerning the merits of their case. If inmates are unwilling to save their money and prepay filing fees, such a decision may be a good indicator of the merits of the case. Courts would be well served by prisoners making such a decision before filing claims. Moreover, § 1915(g) does not prevent all prisoners from accessing the courts; it only precludes prisoners with a history of abusing the legal system from continuing to abuse it while enjoying IFP status. Although prisoners are entitled to meaningful access to the courts, courts are not obliged to be a playground where prisoners with nothing better to do continuously file frivolous claims. Only after demonstrating an inability to function within the judicial system is an indigent inmate asked to pay for access to the courts.

Finally, we note that IFP status is not a constitutional right. Congress created IFP status to assist indigent persons in bringing legitimate claims in the late 1800s. As a congressionally created benefit, IFP status is not constitutionally mandated and can be extended or limited by Congress. As the Eleventh Circuit held in *Rivera,* where no fundamental interest is at stake, " 'Congress is no more compelled to guarantee free access to federal courts than it is to provide unlimited access to them.' " 144 F.3d at 724 (quoting *Roller,* 107 F.3d at 231).

Because § 1915(g) does not infringe upon prisoners' fundamental rights and indigent prisoners are not a suspect class, the three-strike rule need only satisfy a rational basis test. *Harris,* 448 U.S. at 322, 100 S.Ct. 2671. Rodriguez argues that § 1915(g) fails to satisfy a rational basis test. We disagree. Un-

der the rational basis test, § 1915(g) is presumed to be valid and we will uphold § 1915(g) if it is rationally related to a legitimate governmental interest. *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). We have previously held that the PLRA satisfied rational basis scrutiny. *Madrid*, 150 F.3d at 1041 (holding that the PLRA's limit on the amount of attorney's fees that can be awarded to inmate's counsel satisfied the rational basis test). We now hold that the PLRA's three-strike rule satisfies rational basis scrutiny. The three-strike rule was enacted to curtail the extraordinary costs of frivolous prisoners suits and minimize such costs to the taxpayers. *Madrid*, 150 F.3d at 1041. We have previously recognized that prisoners file a disproportionate number of frivolous suits. *Id.* We also recognized that prisoners file these suits because of "potential gains and low opportunity costs." *Id.* Congress has addressed the rising costs of defending against frivolous prisoner suits by limiting the number of suits they can bring for free. Requiring prisoners to pay filing fees for suits will force them to go through the same thought process non-inmates go through before filing a suit, i.e., is filing this suit worth the costs? Budgetary concerns are a legitimate governmental interest and curbing the costs of defending against frivolous litigation is rationally related to maintaining the budget. Therefore, § 1915(g) satisfies the rational basis test.

### 2. Ex Post Facto

Rodriguez argues that § 1915(g) is unconstitutional because it retroactively bars his lawsuit. The Supreme Court has noted the presumption in our jurisprudence against retroactive legislation. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). However, retroactive effect alone does not make a law unconstitutional. *Id.* at 267–68, 114 S.Ct. 1483. To be unconstitutional, the retroactive effect must impair a substantive right. Changes in jurisdiction or procedural rules do not normally raise retroactivity concerns. *Id.* at 274–75, 114 S.Ct. 1483.

There are two potential bases upon which Rodriguez claims that § 1915(g) has unlawful retroactive effect. First, Rodriguez argues

he filed his claim before § 1915(g) was enacted, and that any application to his complaint now would be retroactive. This argument fails at its most basic premise. The PLRA was enacted on April 26, 1996. *See Canell v. Lightner*, 143 F.3d 1210, 1212 (9th Cir.1998). Rodriguez filed his complaint on May 22, 1996, and he filed his notice of appeal on December 23, 1996. Therefore, application of § 1915(g) to his complaint and this appeal is not retroactive.

■ Second, Rodriguez argues, although not explicitly, that because § 1915(g) counts as frivolous claims dismissed before it was enacted, it is an unconstitutional ex post facto law. We addressed and rejected this argument in *Tierney v. Kupers*, 128 F.3d 1310, 1311–12 (1997). In *Tierney*, we held that the plain language of § 1915(g) requires that the court look at cases dismissed prior to the enactment of the PLRA to determine when a prisoner has used his three strikes. *Id.* at 1311 (noting that " '3 or more prior occasions' makes clear [§ 1915(g)'s] application to claims dismissed prior to the current proceeding"). We also addressed whether that requirement posed retroactivity concerns. *Id.* at 1312. Ultimately, we held that § 1915(g) does not raise any retroactivity concerns, because it does not affect a substantive right but merely limits a prisoner's ability to proceed IFP. In light of *Tierney*, we reject Rodriguez's claim and hold that § 1915(g) does not violate the Constitution by looking at cases dismissed prior to enactment of the PLRA to determine when a prisoner has had three or more cases dismissed as frivolous.

### 3. Separation of Powers

■ Rodriguez argues that Congress has usurped judicial power by denying IFP status to his claim and therefore the three-strikes rule violates the principal of separation of powers. Specifically, Rodriguez argues that "whether or not an inmate's action or appeal is deemed appropriate for review is the function of the court not Congress."

Separation of powers is intended to structurally protect the independence of each of the three branches of government. *United States v. Klein*, 80 U.S. (13 Wall.) 128, 147, 20

L.Ed. 519 (1871). The Supreme Court has interpreted separation of powers to preclude Congress from (1) usurping judicial authority by prescribing a rule of decision in its own favor, (2) vesting review of Article III courts in the Executive Branch, and (3) retroactively requiring the federal courts to reopen final judgments. *See Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 215–16, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995); *United States v. Sioux Nation of Indians,* 448 U.S. 371, 404, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980). Section 1915(g) clearly does not vest review of judicial decision in the Executive Branch and it does not reopen final judgments, leaving only the remaining question of whether § 1915(g) usurps judicial authority by prescribing a rule of decision.

Only one circuit court has addressed this issue. In *Rivera,* the Eleventh Circuit rejected a separation of powers challenge to § 1915(g). 144 F.3d at 726. The court reasoned that removing IFP status does not infringe on a rule of decision. *Id.* The court specifically held that § 1915(g) is a procedural rule which does not infringe on the courts ability to decide. *Id.* at 726. We agree. In enacting § 1915(g), Congress has not usurped judicial authority. We are still free to apply substantive law to legal claims. Section 1915(g) only denies IFP status to prisoners who have abused the judicial system. As explained above, those prisoners remain free to bring a cause of action, and to have that cause heard and decided by the courts. Congress has simply refused to subsidize constant abuse of the judicial system. Congress was free to establish filing fees; it was free to create IFP status and waive filing fees; and it did not usurp judicial authority by removing IFP status from prisoners who abused that privilege. Because § 1915(g) is a purely procedural rule which does not control the ultimate decision of claims, we hold that it does not violate the structural distribution of power required by our Constitution.

## IV. Conclusion

For the reasons stated above, we dismiss Rodriguez's appeal without prejudice. Rod-riguez may resume this appeal upon prepaying the filing fee.