**Wendell R. AYERS, Plaintiff,**

v.

**Larry NORRIS, Director, Arkansas Department of Correction; Leroy Brownlee, Chairman, Arkansas Post Prison Transfer Board, Defendants.**

**No. PB–C–97–193.**

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

March 31, 1999.

Wendell R Ayers, Calico Rock, AR, plaintiff pro se.

Christopher Richard Heil, Lowber Hendricks Law Firm, Little Rock, AR, for Wendell R Ayers, plaintiff.

Darnisa C. Evans Johnson, Arkansas Attorney General's Office, Little Rock, AR, David B. Eberhard, Department of Community Punishment, Little Rock, AR, for Larry Norris, Director, Arkansas Department of Correction, defendant.

David B. Eberhard, Dept. of Community Punishment, Little Rock, AR, for Leroy Brownlee, defendant.

## MEMORANDUM OPINION

EISELE, District Judge.

By a separately issued Order, the Court denied Defendants' Motion to Dismiss and granted Defendants' Motion for Extension of Time to Respond to Plaintiff's Discovery Requests for Defendants Norris and Brownlee. This Memorandum Opinion sets forth the reasoning behind the dispositions of said motions.

### I. Background

Mr. Ayers is an inmate in the Arkansas Department of Correction following a 1990 conviction in Johnson County Circuit Court on the charge of second-degree murder. Mr. Ayers appealed his conviction in state court and unsuccessfully sought federal habeas corpus relief.

On April 28, 1997, Mr. Ayers filed his *pro se* Application to Proceed Without Prepayment of Fees and Affidavit and his pending Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Thereafter, Mr. Ayers was granted permission to proceed *in forma pauperis*. Initially, he sought declaratory and injunctive relief for alleged violations of due process and equal protection rights during the parole hearing process.

On May 21, 1997, Defendant Norris moved for dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that Mr. Ayers was required to seek permission from the Eighth Circuit Court of Appeals before bringing this successive application for habeas relief.

By Order dated March 11, 1998, the Court denied Defendant Norris's motion to dismiss for lack of jurisdiction, dismissed Mr. Ayers's equal protection claims pursuant to Rule 12(b)(6), determined that Mr. Ayers's petition should be construed as a complaint under 42 U.S.C. § 1983, and determined that Mr. Ayers was entitled to an appointed attorney.

In his Amended Complaint filed April 30, 1998, Mr. Ayers contends that the Ar-

kansas statutes and regulations governing parole create a liberty interest and that conduct of the defendants deprived him of his Fourteenth Amendment due process rights in his parole proceedings. Specifically, Mr. Ayers asserts that the Post Prison Transfer Board has unconstitutionally denied him access to documents, files, and other information used by it in determining Mr. Ayers's eligibility for parole, the opportunity to present evidence on his behalf, and an explanation of its parole decision such that an average person could understand the decision of denial without the use of "boilerplate" reasons. He seeks declaratory and injunctive relief to remedy these asserted injustices.

On June 30, 1998, Defendants Larry Norris and Leroy Brownlee [1] filed the instant Motion to Dismiss pursuant to section 804 of the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(g), commonly known as the "three strikes" provision of the PLRA, which prevents a prisoner from bringing a civil action *in forma pauperis*

> if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g) (Supp.1998).[2] Defendants state that, prior to the instant action, Mr. Ayers has had four actions dismissed for being frivolous or malicious. Defendants further state that Mr. Ayers is not under imminent danger of serious physical injury.

Mr. Ayers responded, making several arguments against dismissal. First, although admitting that he has had four previous actions in federal court dismissed while he was incarcerated, Mr. Ayers denies that all of these dismissals are of the type contemplated in section 1915(g). Second, he argues that, because it was the Court, not he, who determined his action to be a civil action, he should not be held to section 1915(g). Third, Mr. Ayers asserts that section 1915(g) does not require dismissal of *in forma pauperis* actions but rather requires the plaintiff-prisoner to pay the filing fee.[3] Finally, Mr. Ayers contends that section 1915(g) is an unconstitutional infringement on his fundamental right of access to the courts.

## II. Discussion

### A. Mr. Ayers's Previous Actions

On August 14, 1992, Mr. Ayers filed his first *in forma pauperis* action against Lincoln County, Arkansas, John Doe, Circuit Judge, and Vera Reynolds, Circuit Clerk, alleging constitutional violations pursuant to 42 U.S.C. § 1983. *See Ayers v. Lincoln County, et al.,* No. PB–C–92–519 (E.D.Ark. Aug. 14, 1992). In dismissing Mr. Ayers's case on September 30, 1992, the Court found that the Complaint was lacking in merit and must be considered frivolous.

On April 5, 1993, Mr. Ayers filed his second *in forma pauperis* action against Fred D. David, III and Maxie G. Kizer alleging constitutional violations pursuant to 42 U.S.C. § 1983. *See Ayers v. Davis, et al.,* No. PB–C–93–236 (E.D.Ark. Apr. 5, 1998). In his Proposed Findings and Recommendations, the Magistrate Judge wrote, "plaintiff's complaint sets forth no arguable legal theory or facts which are

---

**1.** Leroy Brownlee was added as a defendant in Plaintiff's Amended Complaint filed April 30, 1998.

**2.** The Court notes that section 1915(g) appears to be at odds with another provision in 28 U.S.C. § 1915, which states: "In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has

no assets and no means by which to pay the initial partial filing fee." 28 U.S.C. § 1915(b)(4) (Supp.1998). Unfortunately for Mr. Ayers, because he has *some* money, he does not have "no assets or no means by which to pay the initial partial filing fee," and so this provision does not apply to him.

**3.** Because of the result reached by the Court, this argument is not addressed.

actionable, and should be dismissed." Proposed Findings and Recommendations, Apr. 8, 1993, at 3. By Order dated April 30, 1993, the Court approved and adopted the Magistrate's Findings and Recommendations and accordingly dismissed Mr. Ayers's complaint. On July 14, 1993, the Eighth Circuit affirmed this Court's decision.

On November 21, 1994, Mr. Ayers filed his third *in forma pauperis* action against Vera Reynolds alleging constitutional violations pursuant to 42 U.S.C. § 1983. *See Ayers v. Reynolds,* No. PB–C–94–716 (E.D.Ark. Nov. 21, 1994). In his Findings and Recommendation, the Magistrate Judge wrote, "Plaintiff's complaint sets forth no arguable legal theory or facts which are actionable, and should be dismissed." Findings and Recommendation, Dec. 1, 1994, at 2. By Order dated December 19, 1994, the Court approved and adopted the Magistrate's Findings and Recommendation and accordingly dismissed Mr. Ayers's complaint. On July 26, 1995, the Eighth Circuit affirmed this Court's decision.

On February 9, 1996, Mr. Ayers filed his fourth *in forma pauperis* action against M.C.I., alleging constitutional violations pursuant to 42 U.S.C. § 1983. *See Ayers, et al. v. M.C.I.,* No. PB–C–96–74 (E.D.Ark. Feb. 9, 1996). In his Findings and Recommendation, the Magistrate Judge wrote, "Plaintiffs' allegations, even if true, do not rise to the level of a constitutional violation.... [T]he court finds that plaintiff's complaint sets forth no arguable legal theory or facts which are actionable, and should be dismissed." Findings and Recommendation, Mar. 8, 1996, at 2. By Order dated March 26, 1996, the Court approved and adopted the Magistrate's Findings and Recommendation and accordingly dismissed Mr. Ayers's complaint.

The Court further notes that each of Mr. Ayers's previous *in forma pauperis* proceedings was dismissed by the Court *sua sponte* before any responsive pleadings were ever filed by any of the defendants.

*B. Mr. Ayers's Present Action*

■ Mr. Ayers originally filed this action as a petition for writ of habeas corpus under 28 U.S.C. § 2254. However, the Court later determined that Mr. Ayers's claims are not cognizable on a section 2254 petition for writ of habeas corpus but that they may be cognizable claims under 42 U.S.C. § 1983. Section 1915(g) limits a prisoner's ability to bring a *civil action.* Mr. Ayers argues that his present action should not be deemed a "civil action" as contemplated under section 1915(g) because it was the Court, not he, who determined that his action was a civil action.

The Court must agree with the defendants that "Plaintiff cannot avoid the effects of the PLRA by mislabeling pleadings." Defendants' Reply at ¶ 2. Simply put, the relief sought by Mr. Ayers cannot be obtained in a section 2254 petition for writ of habeas corpus, but his claims may be cognizable as a civil action under 42 U.S.C. § 1983. Rather than dismissing Mr. Ayers's 2254 petition, the Court gave him the benefit of the doubt and allowed him to amend his complaint to allege a cause of action under section 1983. Now, Mr. Ayers argues that he should benefit doubly from the Court having "converted" his action into a civil action, namely that he should be allowed to proceed with his case under section 1983 and that his case should not be treated as a civil action under section 1915(g). The Court regards substance over form, and therefore the claims pursued by Mr. Ayers constitute a civil action for purposes of section 1915(g). *See Lyon v. Krol,* 127 F.3d 763 (8th Cir. 1997) (considering a section 1983 action as a civil action under section 1915(g)); *Carson v. Johnson,* 112 F.3d 818, 820–21 (5th Cir.1997) (reaching same conclusion).

*C. Applicability of 28 U.S.C. § 1915(g)*

■ The Court agrees with the defendants that section 1915(g) applies to Mr. Ayers's present action. First, Mr. Ayers is proceeding *in forma pauperis* in the instant civil action. Second, Mr. Ayers has

previously filed four civil actions in which he proceeded *in forma pauperis,* and all four actions were dismissed on the grounds that they were frivolous.[4] Mr. Ayers disputes that these actions were frivolous, but the Court must defer to the opinions in those cases in which the actions were found to be frivolous.

Section 1915(g) permits a prisoner in Mr. Ayers's position to proceed *in forma pauperis* only if "the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g) (Supp.1998). Mr. Ayers's Amended Complaint requests declaratory and injunctive relief for asserted due process violations in parole proceedings and procedures as they relate to Mr. Ayers. Nowhere in Mr. Ayers's complaint does he allege that he is "under imminent danger of serious physical injury." The Court must therefore conclude that section 1915(g) prevents Mr. Ayers from proceeding *in forma pauperis* in the instant action.

### D. Standing

█ In *Lyon, supra,* the Eighth Circuit considered a constitutional challenge to section 1915(g). For the court to consider the constitutionality of the provision, the court held that the plaintiff-prisoner must first show that he has standing: "In the context of alleging an unconstitutional burden on the right of access to court, it is not sufficient for standing to show that court access could be impeded. Rather, a prisoner must show that it actually has been." *Id.* at 765. More specifically, the plaintiff-prisoner must show that the fee requirements imposed by the PLRA have deprived him of access to court. The Court will now address the issue of whether Mr. Ayers has standing to challenge the constitutionality of section 1915(g).

The filing fee required of Mr. Ayers is $150. 28 U.S.C. § 1914(a) (Supp.1998).

In *Lyon,* the Court wrote that the plaintiff-prisoner

> had over $180 in his prison accounts and was receiving $67.20 in prison wages each month. This is more than the $120 then required as a filing fee. [He] has most of his basic necessities provided as a prisoner, and payment of the fee would not have forced him to go without these essentials. He would still have had over $60 remaining after paying the filing fee; that amount and his monthly wages would have been available to purchase other necessary incidentals.

*Id.* at 765. Mr. Ayers's Affidavit in Support of Request to Proceed *In Forma Pauperis* reveals that Mr. Ayers has only $100.28 in the inmate welfare fund. He is not employed, and, although he has received some money in the past year from family and a medical malpractice settlement, he has no notable assets and does not have any cash or money in any checking or savings account. See Affidavit in Support of Request to Proceed *In Forma Pauperis,* Exh. A. to Plaintiff's Supplement to His Response to Motion to Dismiss. Mr. Ayers does not have the $150 necessary to file a civil action in this Court. Therefore, under *Lyon,* Mr. Ayers has standing to challenge the constitutionality of section 1915(g).

### E. Constitutionality of Section 1915(g)

█ Mr. Ayers contends that section 1915(g) violates his equal protection rights by infringing upon his fundamental right of access to the courts. *See Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954) (holding that the Fifth Amendment's Due Process Clause contains an equal protection component applicable to the federal government).

Normally, a statute will survive an equal protection challenge if "the legislative clas-

---

**4.** Although Mr. Ayers's earlier dismissals occurred prior to the enactment of the Prison Litigation Reform Act on April 26, 1996, several courts have concluded that the three strikes provision does not have an impermis-

sible retroactive effect. *See Lyon,* 127 F.3d at 765 (citing *Adepegba v. Hammons,* 103 F.3d 383, 387 (5th Cir.1996); *Green v. Nottingham,* 90 F.3d 415, 420 (10th Cir.1996)).

sification ... bears a rational relation to some legitimate end." *Romer v. Evans,* 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). If, on the other hand, the statute interferes with a fundamental right or discriminates against a suspect class, it must withstand "strict judicial scrutiny." *Kadrmas v. Dickinson Public Schools,* 487 U.S. 450, 457–58, 108 S.Ct. 2481, 101 L.Ed.2d 399 (1988).

Mr. Ayers contends that a fundamental interest is at stake[5] and therefore this Court should apply strict scrutiny analysis.[6] Under strict scrutiny analysis, a classification will be upheld only if it is narrowly drawn to serve a compelling government interest. *Plyler v. Doe,* 457 U.S. 202, 216–17, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). While the government may have a compelling interest in deterring frivolous filings in federal court, Mr. Ayers asserts that the distinction between frivolous claims filed by prisoners and those filed by nonprisoners is unnecessary to achieve that interest.

Mr. Ayers is correct in stating that all citizens have a fundamental right of access to the courts. *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *see also Harrison v. Springdale Water & Sewer Comm'n,* 780 F.2d 1422, 1427 (8th Cir.1986) ("access to the courts is a fundamental right of every citizen"). Courts have identified the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause, and the First Amendment right to petition the government as the sources of said right. *Schrier*

*v. Halford,* 60 F.3d 1309, 1311 n. 3 (8th Cir.1995); *Harrison,* 780 F.2d at 1427 n. 7. Indeed, for a prisoner, the right of access to the courts is necessary to vindicate all other fundamental constitutional rights. *McCarthy v. Madigan,* 503 U.S. 140, 153, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992).

Five circuit courts of appeals have rejected equal protection challenges to section 1915(g), concluding that the statute passes rational basis review.[7] *Rodriguez v. Cook,* 169 F.3d 1176, 1178–81 (9th Cir. 1999); *White v. Colorado,* 157 F.3d 1226, 1232–35 (10th Cir.1998), *cert. denied,* — U.S. ——, 119 S.Ct. 1150, 143 L.Ed.2d 216 (1999); *Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998), *cert. denied,* — U.S. ——, 119 S.Ct. 1028, 143 L.Ed.2d 38 (1999); *Rivera v. Allin,* 144 F.3d 719 (11th Cir.1998), *petition for cert. filed,* (U.S. Sept. 21, 1998) (No. 98–6127); *Carson v. Johnson,* 112 F.3d 818, 821–23 (5th Cir. 1997). The courts of appeals in those cases applied the lowest level of constitutional scrutiny on the grounds that neither a fundamental right nor a suspect class was at issue.

In *Carson,* the Fifth Circuit stated, "[s]ection 1915(g) does not prevent a prisoner with three strikes from filing civil actions; it merely prohibits him from enjoying IFP status. He still has the right to file suits if he pays the full filing fees in advance, just like everyone else." *Carson,* 112 F.3d at 821. The court said that, to waive the requirement of filing fees in a civil case, the litigant must have a "funda-

---

**5.** Mr. Ayers does not argue that he is a member of a suspect class, and the Eighth Circuit has previously rejected the contention that prisoners or indigents constitute a suspect class. *Murray v. Dosal,* 150 F.3d 814, 818 (8th Cir.1998) (citing *Roller v. Gunn,* 107 F.3d 227, 234 (4th Cir.1997); *Hampton v. Hobbs,* 106 F.3d 1281, 1286 (6th Cir.1997)), *petition for cert. filed,* (No. 9807533) (U.S. Jan. 6, 1999).

**6.** At least one scholar has argued that section 1915(g) would not survive rational basis review. *See* Joseph T. Lukens, *The Prison Litigation Reform Act: Three Strikes and You're Out of Court—It May Be Effective, But Is It*

*Constitutional?,* 70 Temp.L.Rev. 471, 516 (1997) (citing *Romer v. Evans,* 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996), for the proposition that section 1915(g) makes it "more difficult for the affected prisoners not just to 'seek aid from the government,' but to seek redress for and protection against constitutional violations by persons acting under color of state law").

**7.** In several of these cases, section 1915(g) was challenged on constitutional grounds other than equal protection, such as due process. Mr. Ayers only raises an equal protection challenge.

mental interest at stake." *Id.* (citing *M.L.B. v. S.L.J.*, 519 U.S. 102, 113, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996)). Finding that the prisoner's claim for reassignment from administrative segregation did not rise to the level of a fundamental interest, the court applied rational basis review to uphold section 1915(g). *Id.* at 821–22.

In *Rivera*, the Eleventh Circuit engaged in an analysis similar to that of the Fifth Circuit. The court of appeals said that "proceeding IFP in a civil case is a privilege, not a right—fundamental or otherwise," and therefore section 1915(g) does not burden a prisoner's access to the courts. *Rivera*, 144 F.3d at 724. The court of appeals also stated that the prisoner's underlying lawsuit, "that the prison doctor disregarded his medical needs and fondled his genitals during an exam," does not implicate a fundamental interest requiring a waiver of the filing fees. *Id.*

In *Wilson*, the Sixth Circuit found no suspect class in either prisoners or indigents and no fundamental right at stake and consequently applied rational basis review to uphold the constitutionality of section 1915(g). *Wilson*, 148 F.3d at 604–05. The court of appeals held that the prisoner's fundamental right of access to the courts was not disturbed because

> despite being barred from bringing his present § 1983 claims in federal court as an indigent, [the prisoner] still had available to him at the time of the initial filing the opportunity to litigate his federal constitutional causes of action *in forma pauperis* in state court. As long as a judicial forum is available to a litigant, it cannot be said that the right of access to the courts has been denied.

*Id.* at 605 (citation omitted).

In *White*, the Tenth Circuit wrote that the fundamental right of access to the courts is not unlimited and that a prisoner must show "more than a bald assertion of a violation of a basic constitutional right under 42 U.S.C. § 1983; [he] ... must show actual injury." *White*, 157 F.3d at 1233. Because the court of appeals believed that the prisoner's Eighth Amend-

ment claim failed to show that he had received less than adequate health care, it held that no fundamental right was at issue and consequently applied rational basis review to uphold section 1915(g). *Id.* at 1234.

In *Rodriguez*, the Ninth Circuit held that a fundamental right was not at stake because:

> Section 1915(g) does not prohibit prisoners from accessing the courts to protect their rights. Inmates are still able to file claims—they are only required to pay for filing those claims.... [W]e recognize that some prisoners may be unable to prepay filing fees, and will thereby be unable to bring their actions immediately. However, non-prisoners face similar concerns. Some prisoners will be required to save money in order to prepay a filing fee and bring a claim. Again, non-prisoners face that same situation. Section 1915(g) does require prisoners to be fiscally responsible and make decisions concerning the merits of their case. If inmates are unwilling to save their money and prepay filing fees, such a decision may be a good indicator of the merits of the case. Courts would be well served by prisoners making such a decision before filing claims. Moreover, § 1915(g) does not prevent all prisoners from accessing courts: it only precludes prisoners with a history of abusing the legal system from continuing to abuse it while enjoying IFP status. Although prisoners are entitled to meaningful access to the courts, courts are not obliged to be a playground where prisoners with nothing better to do continuously file frivolous claims. Only after demonstrating an inability to function within the judicial system is an indigent inmate asked to pay for access to the courts.

*Rodriguez*, 169 F.3d at 1180–81.

The Eighth Circuit, however, has not directly addressed Mr. Ayers's argument. In *Lyon, supra*, the same constitutional challenge was presented to the Eighth Cir-

cuit, but the court concluded that the prisoner did not have standing to challenge section 1915(g)'s constitutionality. *Lyon,* 127 F.3d at 765. Judge Heaney dissented, stating that he would affirm the district court's opinion holding section 1915(g) unconstitutional. *Id.* at 766 (Heaney, J., dissenting); *see also Lyon v. Krol,* 940 F.Supp. 1433 (S.D.Iowa 1996) (district court's opinion).

More recently, in *Murray v. Dosal,* 150 F.3d 814 (8th Cir.1998) (per curiam), *petition for cert. filed,* (U.S. Jan. 6, 1999) (No. 98–7533), the Eighth Circuit rejected a similar, although not identical, challenge to section 1915. *See also Lefkowitz v. Citi–Equity Group, Inc.,* 146 F.3d 609, 612 (8th Cir.1998). There, Mr. Murray, the prisoner, objected generally to section 1915's requirement that he be required to pay the full amount of the filing fee. *Id.* at 816. Under section 1915,

> Even though seeking IFP status, the prisoner is required to pay the full amount of the fee. The court assesses and, when funds exist, collects a partial payment of the court fees required by law, an initial partial filing fee of 20% of the greater of: (a) the average monthly balance in the prisoner's account; or (b) the average monthly balance in the prisoner's account for the 6–month period immediately preceding the filing of the complaint or notice of appeal.

*Id.* (citing 28 U.S.C. § 1915(b)(1)). Mr. Murray argued that the filing fee requirements constituted an unconstitutional barrier to his accessing the courts because "he should not be forced to choose between spending the limited funds in his prison account on small amenities or on pursuing a civil rights action." *Id.* at 817–18.

First, the Eighth Circuit stated that the imposition of a filing fee over time is not an unconstitutional burden on the right of access to the courts. *Id.* at 816. "Congress has long regulated the access of indigent litigants to the federal judicial system .... [and][t]he Supreme Court has never recognized an unlimited rule that an indigent at all times and in all cases has

the right to relief without the payment of fees." *Id.* at 817 (quoting *Roller v. Gunn,* 107 F.3d 227, 230–31 (4th Cir.1997)) (citations and internal quotation marks omitted). Second, the court of appeals said that Mr. Murray had failed to show that his access to the courts had actually been impeded, citing *Lyon* on the issue of standing. *Id.* at 817–18. Finding that no fundamental right had been burdened and that neither prisoners nor indigents constitute a suspect class, the court held that the filing fee requirements withstand rational basis review. *Id.* at 818.

Mr. Ayers's case is distinguishable from *Murray* in that Mr. Ayers is not challenging the requirement that he pay the full filing fee; Mr. Ayers is simply asking that he be permitted to pay the filing fee over time rather than up front in full. Moreover, Mr. Ayers does not have the $150 required to prepay the entire filing fee.

First, the Court must determine whether Mr. Ayers's has a fundamental interest at stake. In *Bounds v. Smith,* the Supreme Court said that the fundamental right of access to the courts requires that prisoners be given "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds,* 430 U.S. at 828, 97 S.Ct. 1491. Such access must be "adequate, effective, and meaningful." *Id.* at 822, 97 S.Ct. 1491.

An inmate alleging a violation of *Bounds* must show actual or threatened injury. *Lewis v. Casey,* 518 U.S. 343, 349–50, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (likening the "actual injury" requirement to constitutional standing). That is, Mr. Ayers must show that section 1915(g) has actually hindered his efforts to pursue a legal claim. *See id.* at 351, 116 S.Ct. 2174.

However, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Id.* at 354, 116 S.Ct. 2174. In the context of inmate court access, the Supreme Court is "concerned in large part with original actions seeking new trials, release from confinement, or *vindication*

*of fundamental civil rights....* [H]abeas corpus and *civil rights* actions are of 'fundamental importance ... in our constitutional scheme' because they directly protect our most valued rights." *Bounds,* 430 U.S. at 827, 97 S.Ct. 1491 (emphasis added) (citing and quoting *Johnson v. Avery,* 393 U.S. 483, 485, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); *Wolff v. McDonnell,* 418 U.S. 539, 579, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)); *see also Lewis,* 518 U.S. at 354, 116 S.Ct. 2174 (stating that the concerns in *Bounds* were "attempts by inmates to pursue direct appeals from the convictions for which they were incarcerated," habeas petitions, and civil rights actions under 42 U.S.C. § 1983 to vindicate basic constitutional rights).

Mr. Ayers's Amended Complaint is brought pursuant to 42 U.S.C. § 1983 and alleges a denial of due process in parole proceedings and procedures. He contends that, based on Arkansas statutes and regulations of the Arkansas Post Prison Transfer Board, he has a liberty interest in accessing his records and, by denying him access to said records, Defendants have denied Mr. Ayers due process in his parole proceedings.

The Court believes that Mr. Ayers's allegations are sufficient to show a *Bounds* violation. A state's parole statutes and regulations may give rise to a liberty interest that is entitled to Procedural due process protection. *Marshall v. Mitchell,* 57 F.3d 671, 672 (8th Cir.1995). Procedural due process is a fundamental right. 2 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law: Substance and Procedure* § 15.7, at 434 (2d ed.1992) (stating, "the Supreme Court has recognized that there is a right to fairness in procedures concerning individual claims against governmental deprivations of life, liberty, or property.... [T]his right is not reflected in a specific decision but is, rather, an implied recognition of the fundamental nature of the due process clause in those decisions dealing with 'procedural due process' rights," and citing various supporting cases in footnote 29). Because Mr. Ayers is seeking vindication of a fun-

damental constitutional night through a section 1983 action, he has alleged the correct type of legal claim for a *Bounds* violation.

The Court also believes that Mr. Ayers's has shown an actual injury, under *Bounds.* If the Court were to enforce section 1915(g)'s three strikes provision, Mr. Ayers would be denied *in forma pauperis* status in the instant action. If the Court were to deny Mr. Ayers *in forma pauperis* status, it would effectively bar Mr. Ayers from pursuing his procedural due process claim under section 1983. Mr. Ayers does not presently have the $150 necessary to prepay the entire filing fee. He is not employed, he has no alternative means of income, and he has some eleven years remaining on his sentence. A 1988 Eighth Circuit case aptly demonstrates this proposition.

In *In re Tyler,* 839 F.2d 1290 (8th Cir. 1988), the Eighth Circuit was confronted with a district court order limiting the filings of a "frequent filer" prisoner. The district court, *inter alia,* limited Mr. Tyler to a single *in forma pauperis* filing per month unless he was or was about to be subjected to "immediate, extraordinary, and irreparable physical harm." *Id.* at 1295. In a per curiam opinion, the Eighth Circuit affirmed the district court's order, attaching said order to its opinion because it agreed with the district court's policy and rationale. *Id.* at 1291. In addressing Mr. Tyler's abuses of the federal judicial system, the district court wrote:

Mr. Tyler has no money. The records of this court contain documentation ... disclosing that his prison trust account is for all practical purposes non-existent as a source of funds for him to pay any fee for filing cases in this court or elsewhere. Thus, it can be concluded that *if he were to be prohibited from proceeding in forma pauperis in any case, his access to this court would be totally denied.* In accordance with *Green v. White,* we reject this alternative as too

strict a sanction to impose on Mr. Tyler at this time.

*Id.* at 1294 (emphasis added) (citing *Green v. White*, 616 F.2d 1054 (8th Cir.1980) (modifying lower court's order by deleting that portion of it enjoining prisoner from ever proceeding *in forma pauperis* under 28 U.S.C. § 1915)).

In considering constitutional challenges like that of Mr. Ayers, several of the circuit courts have found that no fundamental interest is at stake because denial of *in forma pauperis* status does not prevent prisoners from accessing the courts but simply requires that they pay the filing fee. The Ninth Circuit stated that prisoners will have to save their money and be fiscally responsible if they wish to pursue a cause of action in federal court. *Rodriguez*, 169 F.3d at 1180–81. In the Court's view, the conclusions of these courts ignore the realities of prison life.

Prisoners do not shed their constitutional rights at the jailhouse door. *Turner v. Safley*, 482 U.S. 78, 95, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). At the same time, they do not enjoy the full panoply of rights otherwise available to persons in the free world. *Id.* (stating that "a prison inmate 'retains those [constitutional] rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system' "). Along those lines, prisoners often have little if any money, and there is no guarantee that they will have income while in prison.

In *Wilson*, the Sixth Circuit found that the inmate's right of access to the courts had not been infringed because he could pursue his claim in state court. The Court believes that the Supreme Court has rejected such an alternative as a remedy for a denial of access to the courts. In *Smith v. Bennett*, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961), the Supreme Court considered Iowa's requirement that all indigent prisoners pay a statutory filing fee before an application for writ of habeas corpus or the allowance of an appeal in such proceedings will be docketed. The

State argued that indigent prisoners in its custody could seek vindication of federal rights alleged to have been denied by the State in the federal courts. *Id.* at 713, 81 S.Ct. 895. The Court wrote in response, "[b]ut even though this be true ... it would ill-behoove this great State, whose devotion to the equality of rights is indelibly stamped upon its history, to say to its indigent prisoners seeking to redress what they believe to be the State's wrongs: 'Go to the federal court.' " *Id.* The Court held that, in failing to extend the privilege of the writ of habeas corpus to its indigent prisoners, Iowa had denied them the equal protection of the laws. *Id.* at 714, 81 S.Ct. 895.

"[F]ederal courts are vested with a 'virtually unflagging obligation' to exercise the jurisdiction given them. 'We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.' " *McCarthy v. Madigan*, 503 U.S. 140, 146, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (citation omitted) (citing and quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821)). " '[T]he principles that necessarily frame our analysis of prisoners' constitutional claims' is that 'federal courts must take cognizance of the valid constitutional claims of prison inmates.' Because a prisoner ordinarily is divested of the privilege to vote, the right to file a court action might be said to be his remaining most 'fundamental political right, because preservative of all rights.' " *Id.* at 153, 112 S.Ct. 1081 (citation omitted) (quoting *Turner*, 482 U.S. at 84, 107 S.Ct. 2254 and *Yick Wo v. Hopkins*, 118 U.S. 356, 370, 6 S.Ct. 1064, 30 L.Ed. 220 (1886)). The Court thus concludes that the possibility that Mr. Ayers might be able to pursue his cause of action in state court is inadequate to resolve the violation of his fundamental right of access to the courts.

■ Certainly, the Court accepts the notion that prisoners do not have a constitutional right to proceed *in forma pauperis. See Lyon,* 127 F.3d at 765 (stating, "[t]here is no constitutional requirement that court fees always be waived if a litigant is indigent") (citing *United States v. Kras,* 409 U.S. 434, 450, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973)); *but see M.L.B. v. S.L.J.,* 519 U.S. 102, 110–16, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996) (summarizing cases where court fees must be waived if they prevent litigants from vindicating basic fundamental rights). However, in the context of the fundamental right to court access, the Supreme Court is concerned with the *means* for ensuring that access rather than the ends in themselves. *Lewis,* 518 U.S. at 351, 116 S.Ct. 2174. Although *in forma pauperis* status is not a right, it is a means for ensuring that an indigent prisoner is guaranteed his fundamental right of court access, and, in Mr. Ayers's case, it may be constitutionally required. Just as the fundamental right of access to the courts may require that a prison provide inmates with a law library or access to qualified legal assistance so may it require that an indigent prisoner be given *in forma pauperis* status. *See id.* at 356–57, 116 S.Ct. 2174; *Bounds,* 430 U.S. at 822, 97 S.Ct. 1491 (stating, "in order to prevent 'effectively foreclosed access,' indigent prisoners must be allowed to file appeals and habeas corpus petitions without the payment of docket fees") (citing and quoting *Burns v. Ohio,* 360 U.S. 252, 257, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959); *Smith v. Bennett,* 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961)); *Hershberger v. Scaletta,* 33 F.3d 955 (8th Cir.1994) (holding that indigent inmates in administrative segregation could not be denied free postage for legal mail).

■ Because the Court concludes that a fundamental right is at stake, it must employ strict scrutiny analysis in evaluating the constitutionality of section 1915(g). As noted above, strict constitutional scrutiny requires that a classification be narrowly tailored to serve a compelling government interest.

"Congress enacted PLRA with the principal purpose of deterring frivolous prisoner litigation by instituting economic costs for prisoners wishing to file civil claims." *Lyon,* 127 F.3d at 764 (citing legislative history). Even if it might be shown that this is a compelling government interest, the Court does not believe that the classifications made by section 1915(g) are narrowly tailored to serve this interest.

In *Lyon,* Judge Heaney analyzed the problem in his dissenting opinion:

[The defendant] has also shown that section 1915(g) violates prisoners' equal protection rights. Although it is true that the number of suits brought by prisoners has increased, there is no indication that the increase has significantly out-paced the increase in the number of people incarcerated in this country nor have the reasons for the increase in claims been established. In any case, prisoners continue to bring legitimate claims amid the large number of claims the courts dismiss as frivolous or failing to state a cognizable claim. In passing section 1915(g), members of Congress stated that the purpose of the provision is to require prisoners to pay for filing a lawsuit in the same way as nonprisoners. However, the provision has the opposite effect. Instead of being subjected to the same rules as nonprisoners, inmates who would otherwise qualify for in forma pauperis status must now pay the filing fees up front.

Although prisoners are not a suspect class for the purpose of determining the proper standard of equal protection review, access to the courts is a fundamental right that remains with an individual even after incarceration.... [The defendant's] claim that he suffered a violation of his religious freedom is precisely the type of fundamental rights claim for which we have vigilantly guarded a prisoner's access to the courts.

Because section 1915(g) affects a fundamental right, we must review the statute under a "strict scrutiny" standard.

Under strict scrutiny, we uphold a classification only if it is narrowly drawn to serve a "compelling governmental interest." The government must prove that it has a compelling interest in the classification it has selected. The government might show that curtailing the number of claims flooding the courts is a compelling government interest. Even so, it cannot show that the classification of potentially frivolous claims into "prisoner" and "nonprisoner" claims is necessary or even effective in addressing the problem.

*Lyon*, 127 F.3d at 766–67 (Heaney, J., dissenting) (citations and footnotes omitted); *but see Murray*, 150 F.3d at 818 (stating that "[p]risoners are not similarly situated to non-prisoners").

In concluding that section 1915(g) violated equal protection, the district court in *Lyon* said,

> [Section] 1915(g) would stop only indigent inmates with three previous frivolous dismissals from filing new civil actions. Those inmates who also have filed three or more frivolous actions in the past, but have enough money to pay filing fees, can file as many new lawsuits as they can afford. Under § 1915(b), even indigent inmates have to pay the full fee eventually anyway, which serves as a financial incentive for inmates to file only actions they believe are meritorious. Stopping all further lawsuits under § 1915(g), frivolous or not, by indigent inmates with three dismissals unless imminent serious physical injury is involved would bar many other important and arguably meritorious constitutional claims by only those inmates.

*Lyon*, 940 F.Supp. at 1438.

Section 1915(g) is too broad and yet, at the same time, too narrow to serve the governments' stated purpose. It is too narrow in that it does nothing to reduce the frivolous filings of non-indigent prisoners; they may file as many frivolous filings as they wish under section 1915(g). The provision is too broad in that it may bar non-frivolous actions of indigent prisoners. If an indigent prisoner files three actions using *in forma pauperis* status and all three are dismissed as frivolous, then his fourth *in forma pauperis* action is barred without regard to the merits of his suit, unless he is under imminent danger of serious physical injury. Section 1915(g) makes no provision for the merits of an indigent prisoner's filings; it does not even grant courts the discretion to hear claims that are clearly meritorious. *See* 28 U.S.C. § 1915(g) (Supp.1998) (using the word "shall").

The Court concludes that section 1915(g) is not narrowly tailored to serve the government's stated purpose in enacting the provision. Moreover, there are less restrictive alternatives that would adequately serve the government's stated purpose. *See, e.g., In re Tyler*, 839 F.2d 1290 (8th Cir.1988) (using federal court's inherent power to limit an inmate's abuse of the courts). The Court therefore holds that section 1915(g) is unconstitutional under the equal protection component of the Fifth Amendment's Due Process Clause.

Consequently, Mr. Ayers will be permitted to pursue the instant action *in forma pauperis*, and the Defendants' Motion to Dismiss will be denied. Because Mr. Ayers's case will proceed, the Court will grant the defendants' request for an extension of time to respond to Mr. Ayers's discovery requests.

### III. Conclusion

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss[8] be, and it is hereby, DENIED. The Court directs the Clerk to permit Plaintiff to proceed *in forma pauperis* in the instant action.

IT IS FURTHER ORDERED that Defendants' Motion for Extension of Time to Respond to Plaintiff's Discovery Requests for Defendants Norris and Brownlee[9] be,

8. Doc. No. 30.

9. Doc. No. 32.

and it is hereby, GRANTED NUNC PRO TUNC to July 24, 1998. Defendants are directed to respond to Plaintiff's Discovery Requests on or before April 20, 1999.